(No. 6173— 

ROBERT E. POLEET, GEORGE H. POLEET, WILLIAM N. POLEET and DONALD D. POLEET, Claimants, *vs.* STATE OF ILLINOIS, ILLINOIS YOUTH COMMISSION, Respondent.

*Opinion filed October 4, 1974.*

KEITH H. FITZGERALD, Attorney for Claimants.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

This is an action brought by Robert E. Poleet, George H. Poleet, William N. Poleet and Donald D. Poleet for damages to a home in which Robert E. Poleet has a life interest and George H. Poleet, William N. Poleet and Donald D. Poleet have the remainder interest.

On November 18, 1970, a car being driven by a sixteen-year-old escapee from the Illinois Youth Commission assigned to Grafton, Illinois, accompanied by two other youths from the same camp, crashed into the home. The three youths involved were Michael Kleszewski, Patrick Doherty, and Michael Skuris.

In a report written by Mr. John Platt, Superintendent of Pere Marquette School Camp, he cited the dangers involved in referring youngsters with a history of runaways and auto thefts to open settings. The report also stated that all three boys had a history of runaways and auto thefts. The record further discloses that all three had been charged with various other types of illegal activities.

The car was being driven by Michael Kleszewski, who had been charged with stealing an auto on a previous occasion, violation of parole, and runaway.

The State did not introduce any evidence in its defense of this action.

The applicable law in this instance is stated in the case of *Redebaugh* vs. *State of Illinois*, 22 C.C.R. 306, 308 (1956), where the Court said: "Since respondent did not offer any evidence in rebuttal that would show that reasonable efforts were made to prevent the escape of the inmates or any other facts of circumstances surrounding their escape, the Court must conclude there were no such facts or circumstances to justify respondent's action." Therefore, a prima facie case was established, based on the complaint, departmental reports and stipulations, in favor of claimant.

It is further supported by the statements of the Court in *Finch* vs. *State of Illinois*, 22 C.C.R. 376 (1956), where the Court said: "In fact, we have nothing to govern ourselves as to whether or not the State was negligent in allowing this patient the freedom, which he apparently had, so that the truck in question was stolen and consequently damaged. In the absence of such a showing, we think claimant was correct in his advancement of the doctrine of res ipsa loquitur, and that the burden would

be upon respondent to make some showing as to this patient, i.e., whether or not he was one who could be trusted in the manner in which he was in this particular case to work out in the field." The Court went on to say, "There being nothing in the record pertaining to this patient, other than the fact that the truck was stolen by him and damaged, we have no alternative but to find in favor of claimant."

In 26 C.C.R. 278, the Court, in discussing a situation where the State failed to produce any evidence, referred to the case of *U.S. Fidelity and Guaranty Company, a Corporation* vs. *State of Illinois*, 23 C.C.R. 188, and stated, "that it was incumbent upon the State to come forward with evidence to show that they were not negligent in a situation such as this. Without such showing it will be presumed that the State was negligent based upon the inferences to be drawn from the fact of the escape."

The Court believes the same cause and rule should be applied in this case, and that the State of Illinois was negligent in allowing the escape of the individual who caused the damage.

It appears that in view of the past records of all three of the escapees, and particularly the driver of the car, they should have been kept under greater surveillance than the ordinary inmate. The evidence clearly indicates that the respondent did not take any special steps to prevent the escape of the youth who drove the car, even though his record indicated prior escapes.

As to the question of damages, claimants allege that replacement costs would be $15,454.00.

It is the opinion of this Court, that the measure of damages applied in cases such as this should be the

difference between the market value of the house prior to the incident and the market value after. The only evidence as to market value was furnished by the witness, Mr. Oller, who appraised the property at $9,200.00 and the lot on which the property is located at $5,000.00. The repair cost was shown to be $6,485.58.

It is the opinion of the Court, that $6,485.58 is the proper amount and an award is hereby made in said amount.